DS133990

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

ORIGINAL

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2021 OCT -4  AM 10: 34

DEPUTY CLERK____MG_____

3 - 21 CV 2 4 2 9 - L

Allyson Raskin
_____
Plaintiff

v.

_____
attaching page- not enough space
Defendant

Civil Action No.
_____

## COMPLAINT

Plaintiffs, JD1 and JD2, minors, by and through their managing conservator parent (Title 5 Ch 102.003), Allyson Raskin, pro se, hereby file this Complaint against Defendants, the Dallas Independent School District, the Dallas Independent School District Board of Trustees ("School Board"); Michael Hinojosa, Superintendent of the Dallas Independent School District; in his individual capacity and in his official capacity as Superintendent of the Dallas Independent School District; and Ben Mackey (President), Edwin Flores (1st Vice President), Maxie Johnson (2nd Vice President), Joe Carreón (Board Secretary), Dustin Marshall, Dan Micciche, Karla García, Joyce Foreman, and Justin Henry, all individual elected officials sued in their individual capacity and in their capacity as members of the School Board (collectively, "Defendants") for mandating masks in school.

\* Attach additional pages as needed.

| | |
|---|---|
| Date | October 4, 2021 |
| Signature | *Allyson Raskin* |
| Print Name | Allyson Raskin |
| Address | 5533 Meletio Lane |
| City, State, Zip | Dallas, TX 75230 |
| Telephone | 214-263-5802 |

DEFENDENTS:

DALLAS INDEPENDENT SCHOOL DISTRICT;

DALLAS INDEPENDENT SCHOOL DISTRICT BOARD OF TRUSTEES;

MICHAEL HINOJOSA, SUPERINTENDENT OF THE DALLAS INDEPENDENT SCHOOL DISTRICT;

in his individual capacity and in his official capacity

as Superintendent of the DALLAS INDEPENDENT SCHOOL DISTRICT ; and

and

BEN MACKEY, PRESIDENT,

EDWIN FLORES, 1ST VICE PRESIDENT,

MAXIE JOHNSON, 2ND VICE PRESIDENT,

JOE CARREÓN, BOARD SECRETARY

DUSTIN MARSHALL,

DAN MICCICHE,

KARLA GARCÍA,

JOYCE FOREMAN, and

JUSTIN HENRY, all in their Individual capacities and in their capacities

as members of the DALLAS INDEPENDENT SCHOOL DISTRICT BOARD OF TRUSTEES

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

JD1 and JD2, by and through their parent,

ALLYSON RASKIN,

      Plaintiffs,

         V.

DALLAS INDEPENDENT SCHOOL DISTRICT;

DALLAS INDEPENDENT SCHOOL DISTRICT BOARD OF TRUSTEES;

MICHAEL HINOJOSA, SUPERINTENDENT OF THE DALLAS INDEPENDENT SCHOOL DISTRICT;

in his individual capacity and in his official capacity

as Superintendent of the DALLAS INDEPENDENT SCHOOL DISTRICT ; and

and

BEN MACKEY, PRESIDENT,

EDWIN FLORES, 1ST VICE PRESIDENT,

MAXIE JOHNSON, 2ND VICE PRESIDENT,

JOE CARREÓN, BOARD SECRETARY

DUSTIN MARSHALL,

DAN MICCICHE,

KARLA GARCÍA,

**JOYCE FOREMAN, and**

**JUSTIN HENRY, all in their Individual capacities and in their capacities**

**as members of the DALLAS INDEPENDENT SCHOOL DISTRICT BOARD OF**
**TRUSTEES**

       **Defendants**

## COMPLAINT

Plaintiffs, JD1 and JD2, minors, by and through their managing conservator parent (Title 5 Ch 102.003), Allyson Raskin, pro se, hereby file this Complaint against Defendants, the Dallas Independent School District, the Dallas Independent School District Board of Trustees ("School Board"); Michael Hinojosa, Superintendent of the Dallas Independent School District; in his individual capacity and in his official capacity as Superintendent of the Dallas Independent School District; and Ben Mackey (President), Edwin Flores (1st Vice President), Maxie Johnson (2nd Vice President), Joe Carreón (Board Secretary), Dustin Marshall, Dan Micciche, Karla García, Joyce Foreman, and Justin Henry, all individual elected officials sued in their individual capacity and in their capacity as members of the School Board (collectively, "Defendants") for mandating masks in school.  In support of the claims set forth herein, Plaintiffs allege and aver as follows:

## PARTIES

      1. Plaintiffs JD1 and JD2 are minor children who reside in the Dallas Independent School District ("DISD"), in Dallas County, Texas. Plaintiffs JD1 and JD2 are and were at all times relevant hereto students at a Dallas Independent School District public school. Suit is brought herein on JD1 and JD2's behalf by their mother, Plaintiff Allyson Raskin. Plaintiff Allyson Raskin is filing on behalf of JD1 and JD2 as managing parent under title 5 ch 102 sec 102.003.

2. Plaintiff Allyson Raskin is an adult individual who is a resident and taxpayer in the Dallas Independent School District, in Dallas County, Texas. Plaintiff Allyson Raskin is the parent of Plaintiffs JD1 and JD2.

3. Defendant Dallas Independent School District Board of Education (the "School Board" or the "Board") is a public entity which, acting under color of law, is responsible for the formulation and implementation of all official governmental laws, policies, regulations and procedures in effect for the Dallas Independent School District.

4. Defendant Michael Hinojosa was at all relevant times the Superintendent of the Dallas Independent School District; in the capacity, acting under of law, is responsible for the formulation and implementation of all official governmental laws, policies, regulations, and procedures in effect for the Dallas Independent School District. He is sued in his official and individual capacities.

5. Defendant Ben Mackey is a Dallas County resident and member of the School Board, sued here in his individual and representative capacity. Ben Mackey is currently the President of the DISD School Board.

6. Defendant Edwin Flores is a Dallas County resident and member of the School Board, sued here in his individual and representative capacity. Edwin Flores is currently 1st Vice President of the DISD School Board.

7. Defendant Maxie Johnson is a Dallas County resident and member of the School Board, sued here in his individual and representative capacity. Maxie Johnson is currently 2nd Vice President of the DISD School Board.

8.  Defendant Joe Carreón is a Dallas County resident and member of the School Board, sued here in his individual and representative capacity. Joe Carreon is currently Secretary of the DISD School Board.

9.  Defendant Dustin Marshall is a Dallas County resident and member of the School Board, sued here in his individual and representative capacity.

10.  Defendant Dan Micciche is a Dallas County resident and member of the School Board, sued here in his individual and representative capacity.

11.  Defendant Karla García is a Dallas County resident and member of the School Board, sued here in her individual and representative capacity.

12.  Defendant Joyce Foreman is a Dallas County resident and member of the School Board, sued here in her individual and representative capacity.

13.  Defendant Justin Henry is a Dallas County resident and member of the School Board, sued here in his individual and representative capacity.

14.  At all relevant times hereto, the School Board and the individual Defendants were acting under color of state law.

## JURISDICTION AND VENUE

11. Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

12. This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. §1331, 28 U.S.C. §§1343(a)(3), (4), 28 U.S.C. §1367, 28 U.S.C. § 2201, and 42 U.S.C. §1983.

13. There exists an actual and justiciable controversy between Plaintiffs and Defendant requiring resolution by this Court.

14. Plaintiffs have no adequate remedy at law.

15. Venue is proper before the United States District Court for the Northern District of Texas under 28 U.S.C. §1391 because all parties reside or otherwise are found herein, and all acts and omissions giving rise to Plaintiffs' claims occurred in the Northern District of Texas.

## **FACTS**

16. Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

### A. Dallas Independent School District Board of Trustees

17. Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

18. The DISD **Board of Trustees** is "composed of nine (9) citizens who are representatives of the residents of North Central Oak Cliff, Cockrell Hill, West Dallas, Northwest Dallas, North Dallas, Addison, Carrollton, Farmers Branch, Oak Lawn, West Dallas, Wilmer, Hutchins, East Oak Cliff, Love Field, East Dallas, North Dallas, Near East Dallas, Northeast Dallas, Southeast Dallas, Seagoville, Balch Springs, Southwest Dallas, Pleasant

Grove, Deep Ellum, Upton, and East Dallas. Board members are elected by district on a nonpartisan ballot and serve for staggered terms of three (3) years."[1]

19. The nine (9) individuals currently serving as School Board Members are Defendants: Ben Mackey, President; Edwin Flores, 1st Vice President; Maxie Johnson, 2nd Vice President; Joe Carreon, Board Secretary; Dustin Marshall; Dan Micciche; Karla Garcia; Joyce Foreman; and Justin Henry.

20. Defendant Michael Hinojosa, Superintendent of the Dallas Independent School District, holds a Doctorate degree in Education from the University of Texas at Austin.

21. Defendant Ben Mackey, the President of the DISD School Board, holds a Master's degree from Harvard University and a Bachelor's degree from the University of Florida. We know per TX Const. Art. XVI, § 1 that Ben Mackey signed an Oath of Office swearing to "faithfully execute the duties of the office of school board trustee for the Dallas Independent School District of the State, of Texas and will to the best of my ability, preserve, protect, and defend the Constitution and laws of the United States and of this State."

22. Defendant Edwin Flores, 1st Vice President of the DISD School Board, has a Ph.D. from Washington University in St. Louis and a Bachelor's degree from the University of Texas at Austin. We know per TX Const. Art. XVI, § 1 that Edwin Flores signed an Oath of Office swearing to "faithfully execute the duties of the office of school board trustee for the Dallas Independent School District of the State, of Texas and will to the best of my ability, preserve, protect, and defend the Constitution and laws of the United States and of this State."

23. Defendant Maxie Johnson, 2nd Vice President of the DISD School Board, has a degree from A. Maceo Smith High School. We know per TX Const. Art. XVI, § 1 that Maxie Johnson signed an Oath of Office swearing to "faithfully execute the duties of the office of

---

[1] https://www.dallasisd.org/domain/447

school board trustee for the Dallas Independent School District of the State, of Texas and will to the best of my ability, preserve, protect, and defend the Constitution and laws of the United States and of this State."

24. Defendant Joe Carreon, Secretary of the DISD School Board, has a law degree from the SMU Dedman School of Law, a Master's degree in public policy from the John F. Kennedy School of Government at Harvard University, and a bachelor's degree from Southern Methodist University. We know per TX Const. Art. XVI, § 1 that Joe Carreon signed an Oath of Office swearing to "faithfully execute the duties of the office of school board trustee for the Dallas Independent School District of the State, of Texas and will to the best of my ability, preserve, protect, and defend the Constitution and laws of the United States and of this State."

25. Defendant Dustin Marshall has a Master's degree from the Kellogg School at Northwestern University and a Bachelor's degree from the Wharton School of Business at the University of Pennsylvania. We know per TX Const. Art. XVI, § 1 that School Board Member Dustin Marshall signed an Oath of Office swearing to "faithfully execute the duties of the office of school board trustee for the Dallas Independent School District of the State, of Texas and will to the best of my ability, preserve, protect, and defend the Constitution and laws of the United States and of this State."

26. Defendant Dan Micciche has a J.D. from the University of Chicago Law School and a Bachelor's degree from Stony Brook University. We know per TX Const. Art. XVI, § 1 that School Board Member Dan Micciche signed an Oath of Office swearing to "faithfully execute the duties of the office of school board trustee for the Dallas Independent School District of the State, of Texas and will to the best of my ability, preserve, protect, and defend the Constitution and laws of the United States and of this State."

27. Defendant Karla Garcia has a bachelor's degree from the University of North Carolina at Chapel Hill. We know per TX Const. Art. XVI, § 1 that School Board Member Karla Garcia signed an Oath of Office swearing to "faithfully execute the duties of the office of school

board trustee for the Dallas Independent School District of the State, of Texas and will to the best of my ability, preserve, protect, and defend the Constitution and laws of the United States and of this State."

28.  Defendant Joyce Foreman has a Bachelor's degree from Paul Quinn College and an Associate's degree from El Centro College. We know per TX Const. Art. XVI, § 1 that School Board Member Joyce Foreman signed an Oath of Office swearing to "faithfully execute the duties of the office of school board trustee for the Dallas Independent School District of the State, of Texas and will to the best of my ability, preserve, protect, and defend the Constitution and laws of the United States and of this State."

29.  Defendant Justin Henry has a J.D. from the University of Texas School of Law, a Master's degree from Loyola Marymount University, and a Bachelor's degree from the University of Texas at Austin. We know per TX Const. Art. XVI, § 1 that School Board Member Justin Henry signed an Oath of Office swearing to "faithfully execute the duties of the office of school board trustee for the Dallas Independent School District of the State, of Texas and will to the best of my ability, preserve, protect, and defend the Constitution and laws of the United States and of this State."

30. This nine (9)-member School Board appointed Defendant Dr. Michael Hinojosa to serve as Superintendent of Schools, effective October 2015.

31. As Superintendent, Michael Hinojosa is charged with the administration of the Dallas Independent School District.

## B. Relevant Policies of the Dallas Independent School District Board of Trustees

8

32. The Section A: BASIC DISTRICT FOUNDATIONS of the School Board's policy manual, titled "AE (LOCAL) EDUCATIONAL PHILOSOPHY," provides:

The Board's educational philosophy gives direction to the educational program and daily operations of the District. As such, it is the Board's responsibility to declare its core beliefs and commit the District to a path based upon those beliefs. The Board is responsible, with advice from the Superintendent, to declare those core beliefs and commitments to achieving the District's Mission and Vision. The Board shall provide the Superintendent with the authority to implement this strategic blueprint with fairly broad latitude. It is the Board's responsibility to communicate expected outcomes to the Superintendent. The Board will hold the Superintendent accountable for those outcomes using a variety of success measurements to exercise oversight along the way. The Superintendent must align in scope and spirit with this strategic blueprint.

In accordance with these principles, the Board's goal is to improve the quality of education for all our students. We expect every employee to believe that every student can succeed. The Board works under the following constraints: 1) Do not allow a low level of campus staff satisfaction. 2) Do not allow a negative student experience. 3) Do not violate the Theory of Action.

https://pol.tasb.org/Policy/Download/361?filename=AE(LOCAL).html&title=EDUCATIONAL%20PHILOSOPHY&subtitle=

33. In addition, the United States Constitution leaves to the individual state's responsibility for public education. The Texas Education Agency is under mandate by the Constitution of Texas to provide for the organization, administration and control of a public school system supported by public funds.

The Texas State Constitution also calls for a State Board of Education and a Commissioner of Education.

The Texas Education Agency has outlined the duties of the State Board of Education (SBOE) and the Commissioner of Education. It has also established a State Department of Education (SBOE) (through which policies and directives of the State Board and Commissioner of Education are administered) and has established specific types of school districts.

The Dallas Independent School District is classified as a city school district governed by a locally elected Board of Education, hereinafter referred to as the "Board", which is constituted and governed by Texas Education Code as passed and amended by the Legislature of Texas. Texas Const., Art. VII.

https://policyonline.tasb.org/Policy/Download/139?filename=AA(LEGAL).pdf

34. Furthermore, for its "Principles of Public Service", DISD declares (https://www.dallasisd.org/Page/341):

There are few things more important than the education of our youth, and with that responsibility comes a tremendous opportunity to serve with commitment and integrity and to lead by example. Dallas ISD's Principles of Public Service are designed to guide the entire district as we teach, mentor, and nurture our most precious commodity—our children.

**Trustworthiness**

District employees perform their duties with honesty and integrity in conduct and communication. Employees conduct business with competence, fairness, impartiality, efficiency, and effectiveness to enhance the education of Dallas ISD students and the public trust.

**Responsibility**

District employees take responsibility for actions, decisions, and statements that impact the education community and the public. Employees effectively use the public resources entrusted to the district for the benefit of Dallas ISD students, the state, and the public good.

**Respect**

District employees treat others with professionalism, consideration, and courtesy. Employees respect others' opinions and beliefs, value individual differences, and seek to reach new solutions based on consensus.

**Caring**

District employees build professional relationships with colleagues, peers, and the public based on the highest standards of fairness and consideration. These standards are the foundation of a caring professional environment that supports mutual respect, collaboration toward common goals, and excellence in job performance.

**Citizenship**

District employees strive to be good stewards of the public trust and public resources. They honor and abide by district policies and the laws of the State of Texas and the United States of America.

**Fairness**

District employees conduct business with the public and co-workers in an equitable, impartial, and honest manner, without prejudice and favoritism. Decisions are based on objective and balanced judgment and are in accordance with the district's mission, established rules, and procedures.

35. The Board Policy also provides: (see https://www.dallasisd.org/Page/657)


Nine trustees of the Dallas Independent School District are elected by residents under a single-member district plan. After each census is taken, the Board of Trustees apportions the school district into nine areas of similar population. One trustee is elected to represent each of

these nine districts for a three-year term of office. The terms are staggered so that the board maintains a number of veteran trustees as new members are elected.

The single-member district law requires that each board member reside within his or her area of representation, and that residents of the district elect the person who will represent them on the school board.

Trustees serve without compensation.

The Board of Trustees establishes the policies by which schools operate. In carrying out the task of setting policy, the board identifies needs and establishes priorities for the school system, allocates financial and human resources among the priority areas, and evaluates school performance.

The board also is empowered to provide tax monies for school maintenance and operation and submits bond issues for construction of school facilities that are voted on by Dallas ISD residents.

The board also hires the Superintendent of Schools as the district's chief instructional and executive officer.

**Board Policy Online**

Dallas Independent School District board policy is maintained on the Texas Association of School Boards' server at http://pol.tasb.org/Home/Index/361.

**Board Operating Procedures**

The Board Operating Procedures are intended to guide and assist the Board Members in the conduct of its business. They are not intended to confer legal rights on any other person.

The Board Operating Procedures are not intended to take precedence over Board Policy. If there is a conflict or inconsistency between these Procedures and Board Policy, Board Policy will take precedence. At no time are these Procedures intended to over-ride Local or Legal Policy or state or federal law.

The Board Operating Procedures will be reviewed annually in June by the Board and updated as needed as a part of Board training and orientation. The Board will adopt the Board

Procedures and Board Code of Conduct annually at a regular monthly meeting.

Board Operating Procedures can be viewed at this link.

36. No board policies were found in the Board Policy Manual with respect to giving the Superintendent any authority in a "pandemic or medical emergency."

According to the Board Policy Manual in the section titled "FO (LEGAL) – STUDENT DISCIPLINE," it is clearly stated that "a district, district employee or volunteer, or an independent contractor of a district may not apply an aversive technique, or by authorization, order or consent, cause an aversive technique to be applied to a student." This includes anything that "impairs the student's breathing, including any procedure that involves:

      a)    Applying pressure to the student's torso or neck; or

      b)    Obstructing the student's airway, including placing an object in, on, or over the student's mouth or nose, or placing a bag, cover, or mask over the student's face."

37. There is no evidence of a District's Board of Trustees vote to enforce a mask policy, nor of a public hearing on the mask policy before announcing it. Superintendent Hinojosa has clearly adopted the policy with the blessing of the Board of Trustees, who deliberated and voted by consensus in secret.

38. Finally, Dallas ISD Board Policy Section titled "BBFA(EXHIBIT) - ETHICS: CONFLICT OF INTEREST DISCLOSURES", provides the disclosure of conflicts of interest disclosure statements required of members of the Board, the Superintendent, and, as applicable, other District employees by Local Government Code 176.003 is available on the Texas Ethics Commission website at http://www.ethics.state.tx.us.

13

"From 2005 to 2008, Dr. Flores was appointed to the Advisory Council of the National Institute of General Medical Sciences of the National Institutes of Health (NIH). From 2008 to 2012, Dr. Flores was also appointed to the prestigious Council of Councils of the NIH."

### C. DISD's COVID-19-Based Measures

39. On August 9, 2021, the Dallas ISD, through its superintendent Dr. Michael Hinojosa, informed school district parents and students that masks would be required. The District's website states, "Effective Tuesday, August 10, to protect staff and students from the spread of the highly contagious Delta variant of the coronavirus, Dallas ISD is temporarily requiring all staff, students and visitors to wear masks when on district property."

https://www.dallasisd.org/covidsafety and https://www.dallasisd.org/Page/77626

### D. The Masking Requirement Causes Immediate and Irreparable Harm to Students, Staff, and Community.

43. In his Affidavit, attached hereto as **Exhibit B**, Stephen E. Petty, an expert in the field of Industrial Hygiene who has testified as to the futility and danger caused by an individual wearing a mask in order to avoid transmitting or becoming infected with Covid-19, states the following:

***

3.     I hold relevant industry certifications including board certifications as a C.I.H. (Certified Industrial Hygienist), a C.S.P. (Certified Safety Professional), and as a P.E. (Professional Engineer) in six states (Florida, Kentucky, Ohio, Pennsylvania, Texas and West Virginia). My curriculum is attached hereto as **Exhibit i**.

4.     I have served as an expert in personal protective equipment and related disciplines in approximately 400 legal cases. I have often been certified

as, and provided testimony as, an expert in these areas.  My list of representative cases is attached hereto as **Exhibit ii**.

5.      For example, I am currently serving as an expert in the Monsanto Roundup and 3-M PFAS litigation.  Recently I testified in four trials for the DuPont C-8 litigation.

6.      I taught Environmental and Earth Sciences as an adjunct professor at Franklin University.

7.      I hold nine U.S. patents, most related to heating, ventilation and air conditioning (HVAC) systems.

8.      I am a current member in good standing of the following relevant associations: American Industrial Hygiene Association (AIHA), American Board of Industrial Hygiene (ABIH), American Conference of Governmental Ind. Hygienists (ACGIH), American Institute of Chemical Engineers (AIChE), American Society of Refrigeration, Air Conditioning and Refrigeration Engineers (ASHRAE); Member ASHRAE 40 Std. and TC 2.3, and Sigma Xi.

9.      I am an expert in the field of Industrial Hygiene, which is the science and art devoted to the anticipation, recognition, evaluation, and control of those environmental factors or stressors — including viruses — arising in or from the workplace, which may cause sickness, impaired health and well-being, or significant discomfort among workers or among the citizens of the community.

10.      Industrial Hygiene is fundamentally concerned the proper methods of mitigating airborne/dermal hazards and pathogens, as well as with the design

and use of engineering controls, administrative controls and personal protective equipment, among other things.

11.     Medical doctors, virologists, immunologists, and many public health professionals are not qualified experts in these areas by virtue of those aforementioned credentials.

12.     On May 7, 2021, the Centers for Disease Control (CDC) updated its guidance, providing that the primary mechanism for transmission of Covid-19 is through airborne aerosols, and not, as previously stated, by touching contaminated surfaces or through large respiratory droplets, as also stated during previous periods of the pandemic.

13.     Airborne viral aerosols can consist of a single viral particle or multiple viral particles clumped together, and usually smaller than 5 μ (microns) in size. By comparison, droplets are >5 μ to >10 μ in size.

14.     A square micron is approximately 1/4000th the area of the cross-section of a human hair and 1/88th the diameter of a human hair.  Covid particles are —1/10 of a micron or —1/40,000th the area of a cross-section of a human hair or —1/1,000th the diameter of a human hair.

15.     A recent University of Florida study capturing air samples within an enclosed automobile cabin occupied by a Covid-positive individual showed that the only culturable Covid-19 virus samples obtained were between 0.25μ to 0.5μ in size.  Particles smaller than 5μ are considered very small and/or very fine or aerosols.

16.     Very small particles do not fall by gravity in the same rate that larger particles do and can stay suspended in still air for a long time, even days to weeks.

17.     Because they stay suspended in concentration in indoor air, very small particles can potentially accumulate and become more concentrated over time indoors if the ventilation is poor.

18.     Very small airborne aerosols pose a particularly great risk of exposure and infection because, since they are so small, they easily reach deep into the lung. This explains in part why Covid-19 is so easily spread, and why so little Covid-19 is required for infection.

19.     Exposure to airborne aerosols is a function of two primary parameters: concentration and time.  Less is better regarding both parameters.

20.     For many reasons, personal protective equipment (PPE) is the least desirable way to protect people from very small airborne aerosols.  Moreover, masks are not PPE since they cannot be sealed and do not meet the provisions of the Occupational Safety and Health Administration (OSHA) Respiratory Protection Standard (RPS), namely 29 CFR 1910.134.

21.     Regarding PPE, facial coverings do not effectively protect individuals from exposure to very small airborne aerosols.  A device referred to as a respirator is required to provide such protection.

22.     The AIHA, in their September 9, 2020 Guidance Document for COVID-19 (**Exhibit iii**) noted that the acceptable relative risk reduction

methods must be ≥90%; mask were shown to be only 10% and 5% (see Exhibit iii - Figure 2) and far below the required 90% level.

23.     Similarly, Shah, et al, 2021 (**Exhibit iv**), using ideally sealed masks and particles 1 micron in size, reported efficiencies for the more commonly used cloth masks and surgical masks of 10% and 12% respectively.  No mask can be perfectly sealed, thus "real world" effectiveness would be even lower.

24.     Industrial hygienists refer to a "Hierarchy of Controls" that are typically implemented to minimize exposures, including exposures to very small airborne aerosols like Covid-19.

25.     Regarding practical or "engineering" controls, industrial hygienists focus on practices that dilute, destroy, or contain airborne hazards (or hazards in general).

26.     PPE — especially facial coverings — do not dilute, destroy, or contain airborne hazards. Therefore, facial coverings do not appear anywhere in the Industrial Hygiene (IH) Hierarchy of Controls for very small airborne aerosols like Covid-19. Even respirators (part of the PPE Category and not masks) are in the last priority on the Hierarchy of Controls.

27.     Facial coverings are not comparable to respirators. Leakage occurs around the edges of ordinary facial coverings. Thus, ordinary facial coverings do not provide a reliable level of protection against inhalation of very small airborne particles and are not considered respiratory protection.

28.     For example, during the seasonal forest fires in the summer of 2020, the CDC issued public guidance warning that facial coverings provide no protection against smoke inhalation. That is because facial coverings do not provide a reliable level of protection against the small particles of ash contained in smoke. Ash particles are substantially larger than Covid-19 aerosolized particles.

29.     I have reviewed the Mayfield City School District (MCSD)  (note Stephen E Petty is currently out of the country and cannot provide a Dallas ISD specific affidavit until he returns but here we have included his Ohio affidavit) "Protective Facial Covering Policy During Pandemic/Endemic Events" as set forth in the Policy Manual of the DISD Board of Education.

30.     Ordinary facial coverings like the ones required by the DISD facial covering policy do not meet any of the several key OSHA Respiratory Protection Standards for respirators.

31.     Because of the gaps around the edges of facial coverings required by DISD's policy, they do not filter out Covid-19 aerosols.  The policy stating masks will be worn without gaps defies known science that masks worn today cannot be sealed and always have gaps.

32.     The effectiveness of a cloth facial covering falls to zero when there is a 3% or more open area in the edges around the sides of the facial covering.

33.     Most over-the-counter disposable facial coverings have edge gaps of 10% or more. When adult-sized facial coverings are used by children, edge gaps will usually greatly exceed 10%.

34.     Even short breaks (e.g. to eat) expose individuals to Covid-19 aerosols in indoor spaces.

35.     Ordinary cloth facial coverings like the ones required by the DISD mask requirement do not provide any filtering benefit relative to particles smaller than 5μ if not sealed.

36.     Substantial mitigation of Covid-19 particles could be immediately achieved by:

     a.  opening windows and using fans to draw outdoor air into indoor spaces (diluting the concentration of aerosols),

     b.  setting fresh air dampers to maximum opening on HVAC systems,

     c.  overriding HVAC energy controls,

     d.  increasing the number of times indoor air is recycled,

     e.  installing needlepoint ionization technology to HVAC intake fans, and

     f.  installing inexpensive ultraviolet germicide devices into HVAC systems.

1.     All of the above-referenced techniques are more effective and meet standard industrial hygiene hierarchy of controls (practices) for controlling

exposures in place for nearly 100 years. The usage of cloth facial coverings does not fit within these basic hierarchy of controls since masks are not PPE and cannot be sealed. There are no OSHA standards for facial coverings (masks) as respiratory protection.

2.      Extended use of respiratory PPE is not indicated without medical supervision.

3.      As explained in an article titled "Is a Mask That Covers the Mouth and Nose Free from Undesirable Side Effects in Everyday Use and Free of Potential Hazards?" that was published on April 20, 2021, in the *International Journal of Environmental Research and Public Health* and that is attached to this Affidavit as **Exhibit iv**, the following negative effects from wearing masks was reported in the literature:



**Figure 5.** Diseases/predispositions with significant risks, according to the literature found, when using masks. Indications for weighing up medical mask exemption certificates.

Example statements made in the paper include the following: "The overall possible resulting measurable drop in oxygen saturation (O2) of the blood

on the one hand and the increase in carbon dioxide ($CO_2$) on the other contribute to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase, in some cases also to a significant blood pressure increase." Exhibit iv, p. 25. In fact, "Neither higher level institutions such as the WHO or the European Centre for Disease Prevention and Control (ECDC) nor national ones, such as the Centers for Disease Control and Prevention, GA, USA (CDC) or the German RKI, substantiate with sound scientific data a positive effect of masks in the public (in terms of a reduced rate of spread of COVID-19 in the population)." Exhibit iv, p. 24. For these reasons, students who are required to wear masks pursuant to a mandate suffer immediate and irreparable injury, loss, or damage.

4.    In summary:

    a.  PPE is the least desirable way to protect people from very small airborne aerosols.

    b.  Facial coverings as required by the DISD policy are not recognized as PPE since they cannot be sealed and are not covered by the OSHA RPS.

    c.  If PPE were to be used for protection, respirators, not facial coverings as required by the DISD policy are needed to provide any effective protection from very small airborne aerosols.

    d.  Very small aerosol particles are more likely to be a greater cause of disease than respiratory droplets because they can evade PPE

and reach deep into the lungs, whereas respiratory droplets have to work against gravity in order to travel up a person's nose into the sinus.

e.  Much better alternatives to controlling exposure are available (i.e., engineering controls of dilution – ventilation with increased fresh air and destruction), and should be used to minimize exposures as opposed to masks.

f.  Individuals who are required to wear masks pursuant to a mandate suffer immediate and irreparable injury, loss, and damage due to the overall possible resulting measurable drop in oxygen saturation of the blood on one hand and the increase in carbon dioxide on the other, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase.

44.     Plaintiffs note that the state of Texas was given ~~$4.76bn~~ $12,427,523,607.00 pursuant to the American Rescue Plan ("ARP") Act of 2021 by agreeing to implement the federal guidelines set forth by the CDC for COVID-19 mitigation efforts.  See the attached letter from the U.S. Secretary of Education, attached hereto as **Exhibit P**.  See also, The letter links to the CDC guidelines available at https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/operationstrategy.html.  The guidelines suggest that a school board would forfeit ARP allocations by making masks optional, and states that have prohibited mask mandates in schools have received a letter notifying them that they will not receive ARP funds.  Accordingly, it seems Defendants have a financial incentive for implementing the mask mandate, despite that such a requirement serves no scientific purpose and subjects individuals who wear masks to the health risks discussed above.

45.     Plaintiff Allyson Raskin, in her own capacity and filing on behalf of her minor children JD1 and JD2, as managing parent under title 5 ch 102 sec 102.003, is aggrieved by the immediate and irreparable injury, loss, and damage suffered by JD1 and JD2. Because JD1 is required to wear a mask pursuant to the School Board's mask mandate, which is not only unsupported by science, but which also results in the possible resulting measurable drop in oxygen saturation of the blood on one hand and the increase in carbon dioxide on the other, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase. This masking policy has created anxiety and depression for JD1. JD1 has also suffered in making and keeping friends because of this masking policy. JD2 suffered so much last year with anxiety that the Plaintiff pulled JD2 from DISD and found a small private school that does not require masks. Plaintiff had to pay $10,000 out of pocket for that school and drive 2 hours a day which took away from their business as they are both self-employed.

## COUNT I - 42 U.S.C. §1983 - Violation of Procedural Due Process (5th and 14th Amendments) Against All Defendants

a.     Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

b.     In order establish a claim under section 1983 of the Civil Rights Act, a plaintiff must prove a Defendant: (a) acted under the color of state law; (b) proximately causing; (c) the Plaintiff to be deprived of a federally protected right. 42 U.S.C. §1983.

c.     In the instant case, Defendants unquestionably acted under the color of state law.

d.     Each Individual Defendant is an elected, voting member of the Dallas Independent School District Board of Trustees, with the exception of Defendant Michael Hinojosa, who is the Superintendent of the Dallas Independent School District

e. Under the Fifth Amendment to the Constitution, no person may be deprived of life, liberty, or property without due process of law. U.S. Const. Ann., Amendment V.

f. The Fourteenth applies the protections of the Fifth Amendment to state actors. U.S. Const. Ann., Amendment XIV.

g. Plaintiffs have constitutionally protected interests in the benefits that come from not being subject to the Board's mask mandate, including the ability to pursue an education without being subjected to health risks that are not offset by any scientifically provable benefits.

h. Defendants' implementation of the mask policy unlawfully deprives Plaintiffs of these and other constitutionally protected interests without due process of law. Such deprivation occurred with no notice or meaningful opportunity to be heard as the Superintendent instated the mask mandate prior to offering an opportunity for public discussion. Such deprivation was arbitrary, capricious, based on ignorance without inquiry into facts, and in violation of the School Board's own policies and other applicable laws. Such deprivation violates the Fifth and Fourteenth Amendments of the Unites States Constitution.

a. Plaintiffs were harmed and continue to be irreparably harmed by these unlawful acts, including suffering an overall possible simultaneous drop in oxygen saturation of the blood and increase in carbon dioxide, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase.

**COUNT II - 42 U.S.C. §1983 - Violation of Substantive Due Process
(Fourteenth Amendment) – Against All Defendants**

i. Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

j. In order establish a claim under section 1983 of the Civil Rights Act, a plaintiff must prove a Defendant: (a) acted under the color of state law; (b) proximately causing; (c) the Plaintiff to be deprived of a federally protected right. 42 U.S.C. §1983.

k.      In the instant case, Defendants unquestionably acted under the color of state law.

l.      Each individual Defendant is an elected, voting member of the Dallas Independent School District Board of Trustees with the exception of Defendant Michael Hinojosa, who is the Superintendent of the Dallas Independent School District.

m.      Under the Fourteenth Amendment to the Constitution, and as established by state law including the state created danger doctrine, Plaintiffs have a fundamental right to a public education and to an education in a safe and healthy environment.

n.      Plaintiffs were harmed and continue to be irreparably harmed by these unlawful acts, including suffering an overall possible simultaneous drop in oxygen saturation of the blood and increase in carbon dioxide, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase.

## COUNT III - Violation of Procedural Due Process (TX Const. Art. I, § 13 and Art. I, § 19) Against All Defendants

o.      Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

p.      Article 1, § 13 of the Texas Constitution provides, "All courts shall be open, and every person, for an injury done him, in his land, goods, person, or reputation, shall have remedy by due course of law."

q.      Article 1, § 19 of the Texas Constitution affords the people of Texas with right to be free from violations of the procedural due process rights, and no person may be deprived of life, liberty, or property without due process of law.

r.      Plaintiffs have constitutionally protected interests in the benefits that come from the not being subject to the Board's mask mandate, including the ability to pursue an education without being subjected to health risks that are not offset by any scientifically provable benefits.

s.      Defendants' implementation of the mask policy unlawfully deprives Plaintiffs of these and other constitutionally-protected interests without due process of law. Such deprivation occurred with no notice or meaningful opportunity to be heard as Dr. Michael Hinojosa, Superintendent, Dallas ISD, instated the mask mandate prior to offering an opportunity for public discussion. Such deprivation was arbitrary, capricious, based on ignorance without inquiry into facts, and in violation of the School Board's own policies and other applicable laws. Such deprivation violates Article 1, § 13 and Article 1, § 19 of the Texas Constitution.

t.      Plaintiffs were harmed and continue to be irreparably harmed by these unlawful acts, including by suffering an overall possible simultaneous drop in oxygen saturation of the blood and increase in carbon dioxide, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase.

### COUNT IV - Violation of Substantive Due Process (TX Const. Art. I, § 13 and TX Const. Art. I, § 19) Against All Defendants

u.      Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

v.      Article 1, § 13 of the Texas Constitution provides, "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law."

w.      Article 1, § 19 of the Texas Constitution affords the people of Texas with right to be free from violations of the procedural due process rights, and no person may be deprived of life, liberty, or property without due process of law.

x.      Under Article 1, § 19 of the Texas Constitution, and as established by state law including the state created danger doctrine, Plaintiffs have a fundamental right to a public education and to an education in a safe and healthy environment.

y.      Plaintiffs were harmed and continue to be irreparably harmed by these unlawful acts, including by suffering an overall possible simultaneous drop in oxygen saturation of the blood and increase in carbon dioxide, which contributes to an increased

noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase.

## **RESERVATION OF RIGHTS**

Plaintiffs herein expressly reserve their rights in regards to any additional claims to which they may be entitled under federal law as well as under the laws of the State of Texas, including claims arising from any violations of Texas's Open Meetings Laws or other actions of misconduct that may have been committed by Defendants.  Plaintiffs expressly place Defendants on notice of Plaintiffs' intention to initiate removal proceedings at the state court level against Defendants as a result of the infractions Defendants have committed, as described herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court grant the following relief:

a.    Assume jurisdiction of this action;

b.    Vacate and set aside the Defendants' mask mandate as well as any other action taken by Defendants to institute the mask mandate and implement the provisions of the mask policy;

c.    Declare that the Defendants' masking policy is void and without legal force or effect;

c.    Declare that the institution of the mask policy and actions taken by Defendants to implement the mask policy are arbitrary, capricious, based on ignorance due to failure to inquire into facts, otherwise not in accordance with law, and without observance of required procedures;

d.    Declare that the mask policy and the actions taken by Defendants to implement the mask policy are in violation of the Constitution and contrary to the laws of the United States and the State of Texas;

e.      Temporarily restrain, as well as preliminarily and permanently enjoin Defendants, their agents, servants, employees, attorneys, and all persons in active concert or participation with any of them, from implementing or enforcing the mask policy and from taking any other action to implement the masking policy that is not in compliance with applicable law; and

Grant such other and further relief as may be just, equitable, and proper including without limitation, an award of attorneys' fees and costs to Plaintiffs.

Respectfully submitted this 20th day of September, 2021.

*/s/ Allyson Raskin*
5533 Meletio Lane
Dallas, Texas 75230

Allyson Raskin, individually and on
behalf of her minor children, JD1 and
JD2, as managing parent under title 5 ch
102 sec 102.003

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Allyson Raskin

## DEFENDANTS

DISD, Michael Hinojosa and DISD Board of Trustees

**(b)** County of Residence of First Listed Plaintiff   **Dallas**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   **Dallas**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

RECEIVED

OCT 4 2021   MS

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

Attorneys *(If Known)*

3-21CV2429-L

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [x] 4 | [x] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [x] 440 Other Civil Rights | **Habeas Corpus:** | | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application [ ] 465 Other Immigration Actions | | |
| | [ ] 448 Education | [ ] 550 Civil Rights [ ] 555 Prison Condition [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §1331, 28 U.S.C. §§1343(a)(3), (4), 28 U.S.C. §1367, 28 U.S.C. § 2201, and 42 U.S.C. §1983

Brief description of cause:
Mandating masks on children in school without parental consent

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   [ ] Yes   [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____