IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JD1 and JD2,** by and through their parent **ALLYSON RASKIN,** | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:21-CV-2429-L** |
| | § | |
| **DALLAS INDEPENDENT SCHOOL** | § | |
| **DISTRICT; DALLAS INDEPENDENT** | § | |
| **SCHOOL BOARD OF TRUSTEES;** | § | |
| **MICHAEL HINOJOSA; EDWIN** | § | |
| **FLORES; BEN MACKEY; JOE** | § | |
| **CARREON; DUSTIN MARSHALL;** | § | |
| **DAN MICCICHE; KARLA GARCIA;** | § | |
| **JOYCE FOREMAN; and JUSTIN** | § | |
| **HENRY,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

For the reasons herein explained, the court **dismisses with prejudice** Plaintiffs' claims against all Defendants in this action for alleged violations of the Genetic Information Nondiscrimination Act of 2008, 42 U.S.C. § 2000ff, *et seq*. ("GINA") as pleaded in Counts VIII and IX of Plaintiffs' Amended Complaint (Doc. 29); and **denies** Plaintiffs' Opposed Motion for Leave to File Second Amended Complaint ("Motion for Leave") (Doc. 38), filed January 23, 2024. Further, having determined that Plaintiffs' federal GINA claims should be dismissed, the court **declines** to exercise supplemental jurisdiction over their remaining state law claims and **dismisses without prejudice** these claims pursuant to 28 U.S.C. § 1367(c) for the reasons previously

**Memorandum Opinion and Order – Page 1**

explained in the court's Memorandum Opinion and Order dated November 17, 2021 (Doc. 31 at 8-9).[1]

## I.     Factual and Procedural Background

On October 4, 2021, *pro se* plaintiff Allyson Raskin ("Ms. Raskin") brought this action on behalf of her minor children JD1 and JD2 (collectively, "Plaintiffs") against the Dallas Independent School District ("DISD") and other named Defendants in their individual capacities and their official capacities as members of DISD's Board of Trustees (collectively, "Defendants"). In their Complaint (Doc. 3), Plaintiffs initially asserted that the DISD's mask mandate violated Ms. Raskin's children's due process rights under the United States and Texas Constitutions. The sole basis alleged for subject matter jurisdiction is federal question jurisdiction.

On October 26, 2021, Defendants moved to dismiss all claims by Ms. Raskin on behalf of her minor children JD1 and JD2 for lack of standing and other reasons (Doc. 26). On November 16, 2021, Plaintiffs filed a response to the Motion to Dismiss (Doc. 28) followed by an amended pleading (Doc. 29), which they were entitled to do once as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). On the same date, Plaintiffs also filed a Motion for Preliminary Injunction. Doc. 30.

In their "Amendment to Complaint" ("Amended Complaint"), Plaintiffs assert federal claims for alleged violations of GINA (Counts VIII and IX) based on a new DISD policy regarding "Contact Tracing/Quarantine." Doc. 29 at 3. According to Plaintiffs' Amended Complaint, this policy and what Ms. Raskin refers to as "Immunization Clinics to be established 'on-site' at DISD locations" authorizes the segregation of unvaccinated students in violation of GINA's prohibition

---

[1] For simplicity purposes, the court incorporates by reference the § 1367(c) discussion in its Memorandum Opinion and Order (Doc. 31 at 8-9) as if repeated herein verbatim.

against "discrimination on the basis of genetic information in which the Covid[-]19 vaccination is an MRNA gene therapy" and interferes with her children's privacy by subjecting them to DNA Covid-19 testing and data collection that is shared with state and federal agencies. *Id.* Plaintiffs also assert state law claims for alleged violations of the Texas Open Meetings Action and Texas Government Code § 551.001(Count V); and alleged violations of Texas Family Code §151.001 regarding the rights and duties of parents, including the duty to provide medical care and make medical decisions (Counts VI and VII). Plaintiffs' Amended Complaint starts with Count V and does not include Counts I through IV.

Although Defendants' Motion to Dismiss and standing argument were directed at Plaintiffs' Complaint, the court determined that the same logic applied to the Amended Complaint such that Ms. Raskin lacked Article III standing to lodge claims and sue *pro se* on behalf of her children. Doc. 31 at 4. In this regard, the court agreed with Defendants that the law does not allow parents like Ms. Raskin to lodge claims and sue *pro se* on behalf of their children because individuals who do not have a law license may not represent other parties, even minor children, on a next-friend basis. *Id.* at 6 (citing *Sprague v. Department of Family & Protective Servs.*, 547 F. App'x 507, 508 (5th Cir. 2013) (per curiam) (citations omitted)). The court also noted that Plaintiffs' amended pleadings did not allege that Ms. Raskin's own rights had been violated or that she personally suffered any injury sufficient to establish Article III standing to sue for alleged violations of GINA as a result of DISD's COVID-19 policies.

The court, therefore, dismissed without prejudice for lack of Article III standing the federal GINA claims in Plaintiffs' Amended Complaint (Counts VIII and IX). Having determined that Plaintiffs' only federal claims over which it had original jurisdiction should be dismissed, the court

declined to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims and dismissed without prejudice those claims pursuant to 28 U.S.C. § 1367(c).

Ms. Raskin appealed, contending that the undersigned erred in holding that she could not represent her children in federal court.  On June 2, 2023, the Fifth Circuit issued its opinion (Doc. 35) vacating this court's dismissal of the federal GINA claims brought by Ms. Raskin on behalf of her children JD1 and JD2 against all Defendants in this action.  The case was remanded to this court for further proceedings consistent with the Fifth Circuit's opinion.  Doc. 35.  The Fifth Circuit issued its corresponding mandate (Doc. 36) on November 7, 2023.

Although the undersigned followed published Fifth Circuit precedent in determining that Ms. Raskin lacked standing to proceed *pro se* in representing her children, the Fifth Circuit clarified on appeal that 28 U.S.C. § 1654 is not an absolute bar to parents representing their children, and, therefore, the undersigned erred in "not considering whether federal or state law designates Ms. Raskin's children's claims as her 'own' such that she can represent them."  Doc. 35 at 10.  The case was remanded for the undersigned to address this inquiry in the first instance, that is, whether Ms. Raskin's children's claims belong to her within the meaning of 28 U.S.C. § 1654.  Doc. 35 at 3.  More specifically, after "recognizing that the meaning of "their own cases" in § 1654 sometimes depends on other federal and state law," the Fifth Circuit left it to this court to determine on remand whether federal or state law, including section 151.001(a)(7) of the Texas Family Code, authorizes Ms. Raskin to proceed *pro se* on behalf of her children.  Doc. 35 at 7 n.5, 8, 10.

The Fifth Circuit noted that Ms. Raskin would have the burden on remand to establish that she was authorized under federal or state law to proceed *pro se* on behalf of her children.  *Id.* at 10.  In addition, the Fifth Circuit explained that, on remand, the undersigned "remain[ed] free to

"note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties." *Id.* (quoting *Century Sur. Co. v. Blevins*, 799 F.3d 366, 372 (5th Cir. 2015) (citation omitted). The Fifth Circuit further explained that the undersigned would not need to reach the issue of whether Ms. Raskin has standing to sue *pro se* on behalf of her children if he determined that Plaintiffs' claims should be dismissed as patently frivolous:

> In this circuit, "fairness requires that a litigant have the opportunity to be heard before a claim is dismissed, except where the claim is patently frivolous." *Id.* A claim is frivolous when it is "so lacking in merit that it [is] groundless." *United States v. Mississippi*, 921 F.2d 604, 609 (5th Cir. 1991). Since dismissal of a patently frivolous claim does not require a response from a *pro se* parent, a district court can dismiss a claim alleged by such a parent without considering whether the parent is qualified to bring the suit in the first place. Under those circumstances, dismissal of the claim should ordinarily be without prejudice.

Doc. 35 at 10 (footnote omitted). The Fifth Circuit also questioned the viability of Plaintiffs' GINA claims:

> Here, Raskin brings claims on her children's behalf under the GINA. But that statute "prohibits an employer from discriminating or taking adverse actions against an employee because of genetic information with respect to the employee" or "request[ing], requir[ing], or purchas[ing] genetic information with respect to an employee or a family member of the employee." *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 826 (5th Cir. 2015) (cleaned up). It is not apparent from the face of the operative complaint how this statute has any relevance to DISD's alleged conduct or Raskin's children.

*Id.* at 10 n.9. The Fifth Circuit, however, "le[ft] it up to the [undersigned] to decide whether this case is best resolved by considering the implications of federal or state law vis-à-vis § 1654 or through an alternative procedural mechanism like *sua sponte* dismissal" of Plaintiffs' federal claims for alleged GINA violations. *Id.* at 10.

Rather than considering whether Plaintiffs' GINA claims should be *sua sponte* dismissed, on January 4, 2024, the court entered an order setting deadlines for the parties to brief the issues identified by the Fifth Circuit. The court explained that, for the reasons set forth in the Fifth

Circuit's opinion, it was concerned about the sufficiency of the allegations regarding Plaintiffs'

GINA claims, which could be subject to dismissal for failure to state a claim upon which relief can

be granted; however, because of Ms. Raskin's *pro se* status, the court indicated that it would give

her the opportunity to be heard on this issue as well as the standing issue.  Accordingly, the court

directed Plaintiffs and Defendants to brief the following issues: (1) why Plaintiffs' GINA claims

should not be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can

be granted; and (2) whether Ms. Raskin's children's claims under GINA belong to her within the

meaning of § 1654 because other federal or state law authorizes her to proceed *pro se* on behalf of

her children in asserting the GINA claims.

The court set a deadline of January 25, 2024, for Plaintiffs' brief; and a response deadline

of February 8, 2024, for Defendants' responsive brief.  The court warned that it would not consider

or entertain any issues other than those identified:

> ***No additional briefing or filings pertaining to these issues will be allowed unless
> ordered by the court, and the parties' briefs shall be limited to these issues.  Given
> the narrow scope of the Fifth Circuit's mandate, the court will not entertain any
> issues on remand other than those identified above and will strike and disregard
> any filings or portions of filings that do not comply with this directive.***"

Doc. 37 at 3 (emphasis in original).  Plaintiffs never filed a brief addressing the foregoing issues

regarding Ms. Raskin's standing and the viability of Plaintiffs' GINA claims, despite being given

an opportunity on remand to do so.  Instead, Plaintiffs filed their Opposed Motion for Leave in

which they seek to amend their pleadings again.  Briefing on the Motion for Leave was complete

on March 17, 2024.  On February 8, 2024, the deadline set by the court, Defendants also filed their

brief addressing the remand issues.

## II.     Discussion

### A.  Plaintiffs' GINA Claims

#### 1.   Rule 12(b)(6) Legal Standard

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.

1996).  In ruling on such a motion, the court cannot look beyond the pleadings.  *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  The pleadings include the complaint and any documents attached to it.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'"  *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).  In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion.  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted).  Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'"  *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)  (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff.  *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002).  While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679 (citation omitted).  Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions.  *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted).  The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim.  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).  Stated another way, when a court

deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

### 2. Plaintiffs' GINA Claims are Patently Frivolous and Fail as a Matter of Law.

In *Ortiz*, the Fifth Circuit explained as follows regarding GINA's purpose, prohibitions, and remedies:

> GINA prohibits an employer from discriminating or taking adverse actions against an employee "because of genetic information with respect to the employee." 42 U.S.C. § 2000ff-1(a)(1), (2). The Act also makes it unlawful "for an employer to request, require, or purchase genetic information with respect to an employee or a family member of the employee," with some exceptions. *Id.* § 2000ff-1(b). One of these exceptions is that an employer that offers medical services "as part of a wellness program" may request genetic information if the "employee provides prior, knowing, voluntary, and written authorization" and certain confidentiality requirements are met. *Id.* § 2000ff-1(b)(2); *see also* 29 C.F.R. § 1635.8(b)(2). GINA provides a private right of action, incorporating the enforcement and remedies procedures of Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000ff-6(a)(1).
>
> For purposes of GINA, "genetic information" means information about the "genetic tests" of an individual or her family members, and information about "the manifestation of a disease or disorder in family members of such individual." *Id.* § 2000ff(4)(A); *see also* 29 C.F.R. § 1635.3(c). "Genetic test," in turn, "means an analysis of human DNA, RNA, chromosomes, proteins, or metabolites, that detects genotypes, mutations, or chromosomal changes." *Id.* § 2000ff(7)(A). "The term 'genetic test' does not mean an analysis of proteins or metabolites that does not detect genotypes, mutations, or chromosomal changes." 42 U.S.C. § 2000ff(7)(B). Nor does that term encompass medical tests such as those for blood counts, cholesterol, or liver function. *See* 29 C.F.R. § 1635.3(f)(3). And an employer does not violate GINA through "the use, acquisition, or disclosure of medical information that is not genetic information about a manifested disease, disorder, or

pathological condition of an employee or member, including a manifested disease, disorder, or pathological condition that has or may have a genetic basis." *Id.* § 2000ff-9.

*Ortiz*, 806 F.3d at 826.

Regarding their GINA claims, Ms. Raskin alleges as follows in Plaintiffs' Amended Complaint:

Count VIII—Infringement of privacy and person information

DISD added new policy to [its] website after original filed complaint regarding "Contact Tracing/Quarantine." The policy discriminates against vaccinated and unvaccinated student body and staff. Policy reflecting of the arbitrary laws prior to the Civil Rights Cases of (1883)[.] DISD acting under the color of law [is] authorizing the segregation of the unvaccinated. The treatment of the "unvaccinated" is [in] contrast and in violation of 42 U.S. Code Ch 21F-Prohibiting the discrimination on the basis of genetic information in which the Covid[-]19 vaccination is an mRNA gene therapy.

Pls.' Am. Compl. 3 (citing https://www.dallasisd.org/Page/77414). Plaintiffs' Amended Complaint includes a snapshot of DISD's website. According to Plaintiffs, DISD's policy regarding "Contact Tracing/Quarantine" was as follows on November 16, 2021, the date Plaintiffs filed their Amended Complaint:

**Contact Tracing**

Dallas ISD will continue contact tracing in the 2021-2022 school year. If there is a positive case identified at a campus, the school's COVID-19 Response Team will identify and notify close contacts. The district will also continue collaborating with county health officials as needed.

**Quarantine Protocols**

Persons who had close contact with a person known to have COVID-19 and who meet the following criteria do not need to stay home and quarantine:

  o Tested positive for COVID-19 within the past three months, or
  o Fully vaccinated

The CDC recommends fully vaccinated people who have a known exposure to someone with suspected or confirmed COVID-19 to be tested three to five calendar

days after exposure and to wear a mask in public indoor settings for up to 14 days
or until they receive a negative test result.

**Unvaccinated Students/Staff** who have had close contact with a person known to
have COVID-19:

- o Quarantine at home and be tested five to seven days after exposure. If
  negative and symptom free[,] return to school on day eight.
- o Without a test quarantine for ten calendar days and return to campus on day
  eleven.

Students/Staff who test positive for COVID-19 may not return to school until:

- o At least 24 hours without a fever and
- o Symptoms have improved (cough, headache, sore throat, etc.) and
- o At least 10 days have passed since symptoms first appeared, or
- o Note from a medical professional to return to school

Pls.' Am. Compl. 3.  The current tracing and quarantine policy located on DISD's website at the

link provided in Plaintiffs' Amended Complaint is similar in some respects but slightly different.

Ms. Raskin further alleges with respect to Count IX that the establishment of

"Immunization Clinics . . . 'on-site' at DISD locations" causes her "concern on behalf [of] her

children[] [that their] personal privacy shall be[] subject to DNA testing via [C]ovid[-]19 testing

and data collection shar[ing] within the state and federal agencies." *Id.* at 4 (citing "*Buck v. Bell*

(1927)[.]").  Ms. Raskin posits: "Where is the possible risk when courts rely on the science of the

day to uphold restrictions on individual liberty?"  *Id.*  Regarding vaccinations, DISD's current

website advises students and parents: "To find a COVID-19 vaccine near you, you can visit

vaccines.gov." *See* https://www.dallasisd.org/Page/77412.

As the Fifth Circuit panel in this case aptly noted: "It is not apparent from the face of the

operative complaint [Plaintiffs' Amended Complaint] how this statute has any relevance to DISD's

alleged conduct or [Ms.] Raskin's children." Doc. 35 at 10 n.9.  DISD is not an employer of Ms.

Raskin or her children, who merely attended school in the DISD, and Plaintiffs are not employees

of DISD. Additionally, Ms. Raskin's allegations regarding her children being discriminated against by DISD for not being vaccinated and quarantined if they test positive for COVID-19 is not remotely relevant to GINA's statutory prohibitions or purpose. Ms. Raskin's alleged concern about her children's privacy interests being violated if their DNA or data is collected in connection with COVID-19 testing and shared with state or federal agencies similarly has no relation to GINA's statutory purpose or prohibition against employers requesting, requiring, or purchasing an employee's genetic information, or discriminating against an employee on the basis of genetic information.

Thus, even accepting as true the allegations in the Amended Complaint, Plaintiffs' claims for alleged GINA violations fail as a matter of law. Not only do Plaintiffs' allegations fail to plausibly allege facts supporting a valid claim for relief under GINA, they and Plaintiffs' GINA claims are also patently frivolous in that they are premised on indisputably baseless and meritless legal theories and alleged violations of legal interests that do not exist under GINA. *See United States v. Mississippi*, 921 F.2d at 609. As noted, the Fifth Circuit panel in this case explained that, in this circuit, "fairness requires that a litigant have the opportunity to be heard before a claim is dismissed, except whe[n] the claim is patently frivolous," and ordinarily dismissal should be without prejudice if a litigant is not given an opportunity to be heard prior to dismissal. *See* Doc. 35 at 10 (quoting *Century Sur. Co.*, 799 F.3d at 372 (citation omitted).

Here, the court could have dismissed as frivolous Plaintiffs' GINA claims without giving them an opportunity to be heard, but, out of fairness, it gave both sides a chance to address why these claims should not be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In other words, the court "went out of its way" to ensure that the process was fair by giving all parties an opportunity to be heard. Defendants took advantage of

this opportunity, whereas Plaintiffs made a conscious decision not to brief this issue and instead elected to move for leave to file an amended complaint that no longer includes any claims for alleged violations of GINA.  Accordingly, dismissal of Plaintiffs' GINA claims (Counts VIII and IX) is appropriate because they are frivolous, and Plaintiffs clearly abandoned them in seeking leave to file a Second Amended Complaint that no longer includes any GINA claims.  As Plaintiffs were given an opportunity to be heard, the court determines that dismissal with prejudice of these claims is appropriate under the circumstances. Further, having found Plaintiffs' GINA claims to be baseless and frivolous, the court need not consider whether Ms. Raskin is "qualified to bring this suit in the first place."  Doc. 35 at 10 (footnote omitted).

### B.  Plaintiffs' Request to Amend Their Pleadings

In their Motion for Leave, Plaintiffs seek to file a Second Amended Complaint, which according to Plaintiffs "streamline[s] the . . . claims from the *(Original) Complaint* and the *(First) Amended Complaint*."  Mot. 3.  The proposed Second Amended Complaint is signed by Ms. Raskin, but it appears to have been drafted by a lawyer or someone with significant legal training. The proposed Second Amended Complaint includes claims that are similar to those asserted in Plaintiffs' original Complaint and Amended Complaint, but the claims are not entirely the same in that some claims are based on slightly different facts and legal theories.  For example, apparently recognizing after issuance of the Fifth Circuit's opinion in this case that their GINA claims would likely be dismissed, Plaintiffs no longer rely on or seek relief under GINA.  Instead, Plaintiffs' proposed Second Amended Complaint repackages their GINA claims for alleged privacy violations and genetic discrimination as constitutional violations.  More specifically, Plaintiffs seek to assert claims for "Right to Privacy Violation" and "Right to Equal Protection from Genetic Discrimination" pursuant to 42 U.S.C. § 1983.  Doc. 28-1 at 10.

Plaintiffs assert that they should be allowed to amend their pleadings because:

> In Plaintiffs' Original Complaint, Plaintiff asserted four causes of action, labeled I through IV. As Plaintiff awaited trial, Defendants continued to harm in new ways. In an effort to prevent further harm, Plaintiffs filed a document intending to supplement the Original Complaint by adding causes of action V through IX. *See* ECF (Doc. 29). After calling the clerk to confirm the exact process, Plaintiffs understood the instructions were to supply a supplemental complaint with the new claims. It was at that time that Honorable Sam A. Lindsay ruled *sua sponte* on only the supplemented claims V through IX.

> As Plaintiffs discovered in the ruling, claims I through IV were erroneously omitted. The four claims omitted were a clerical oversight. In the interest of justice, Plaintiffs should be allowed to clarify the record by filing a Second Amended Complaint to include all nine causes of action [which] . . . were numbered properly.

Mot. 1-2.

To support their argument that their Amended Complaint should have been construed as a supplemental rather than an amended pleading, Plaintiffs rely on and quote Judge Andrew S. Oldham's opinion in this case in which he dissented in part and concurred in the judgment. Plaintiffs further assert that they "did not file the supplemental complaint to obfuscate or confuse defendants," and "[t]o the extent that titling the pleading as an 'Amendment to Complaint' caused confusion, it was merely a misnomer and should not serve to nonsuit Counts I through IV." *Id.* Plaintiffs contend that, by allowing them "to file the Second Amended Complaint to clarify the record by including all intended causes of action, this [c]ourt would be serving justice without prejudicing the defendants." *Id.* at 2.

As a preliminary matter, Judge Oldham's opinion—no matter how eloquent, erudite, or esoteric—is not binding on the undersigned because it does not reflect the law of the case. The majority opinion authored by Judge Stephen A. Higginson addressed this precise issue and determined that, notwithstanding Ms. Raskin's *pro se* status, this court acted within its discretion in only considering Plaintiffs' Amended Complaint:

**Memorandum Opinion and Order - Page 14**

The original complaint asserted claims under 42 U.S.C. § 1983 alleging that DISD deprived Raskin's children of their constitutional rights. The amended complaint, which does not raise any § 1983 claims, was filed while DISD's motion to dismiss the original complaint was still pending. "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citation omitted). Although we construe Raskin's *pro se* pleadings liberally, *see SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993), we cannot say that her amended complaint "specifically refers to and adopts or incorporates by reference" the original complaint, *King*, 31 F.3d at 346. Accordingly, the amended complaint rendered the original complaint of no effect, and "the district court [had] the option of either denying the pending motion as moot or evaluating the motion in light of the facts alleged in the amended complaint." *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 304 (2d Cir. 2020). Here, the district court acted within its discretion by ruling on the pending motion.

Doc. 35 at 2 n.1.

Granting Plaintiffs leave on remand to file a Second Amended Complaint would also violate the mandate rule or law of the case doctrine. Lower courts on remand are limited to "only those discrete, particular issues identified by the appeals court." *United States v. McCrimmon*, 443 F.3d 454, 460 (5th Cir. 2006) (quotation marks omitted). In this regard, the Fifth Circuit has explained that:

> The mandate rule requires a district court on remand to effect our mandate and to do nothing else. Further, on remand the district court must implement both the letter and the spirit of the appellate courts mandate and may not disregard the explicit directives of that court. In implementing the mandate, the district court must take into account the appellate court's opinion and the circumstances it embraces. Because the mandate rule is a corollary of the law of the case doctrine, it compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court.

*General Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir. 2007) (internal quotation marks and citations omitted).

Likewise, under the "law of the case doctrine, an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a

subsequent appeal." *Tollett v. City of Kemah*, 285 F.3d 357, 363 (5th Cir. 2002) (citation omitted). This doctrine is "predicated on the premise that there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions or speculate of chances from changes in its members." *Id.* at 363-64 (citation omitted). Consequently, a district court "is not free to deviate from the appellate court's mandate" and must consult the appellate court's opinion in ascertaining the intended mandate. *Id.* at 364 (citation omitted).

The Fifth Circuit's mandate in this case is limited to the undersigned addressing on remand whether federal or state law, including section 151.001(a)(7) of the Texas Family Code, authorizes Ms. Raskin to proceed *pro se* on behalf of her children and/or the viability of Plaintiffs' GINA claims. Additionally, as indicated, the Fifth Circuit considered and rejected Plaintiffs' argument that the court abused its discretion in not considering the allegations and claims in both of their original Complaint and Amended Complaint in dismissing this case. The court, therefore, sees no reason to revisit this issue.

Plaintiffs also fail to explain why their newly repackaged GINA claims—constitutional claims for "Right to Privacy Violation" and "Right to Equal Protection from Genetic Discrimination" brought pursuant to 42 U.S.C. § 1983—could not have been included in any of their pleadings before judgment was entered in this case and before the Fifth Circuit commented on the viability of their GINA claims as previously alleged. Thus, this is not a situation in which Plaintiffs are simply asking the court to consider the pleadings in their original Complaint and Amended Complaint on remand. *See Henderson v. Stalder*, 407 F.3d 351, 354 (5th Cir. 2005) (concluding that the district court's decision on remand to allow an amended complaint to add new claims and a new party in an effort to cure standing issue violated the mandate rule). While the Fifth Circuit left the resolution of Ms. Raskin's standing to the undersigned, there is no indication

**Memorandum Opinion and Order - Page 16**

that its mandate would permit Plaintiffs to amend their pleadings in an effort to cure any standing issue or avoid dismissal under the court's prior reasoning by asserting new federal claims or resurrecting federal claims not included in their Amended Complaint.

Even assuming that Plaintiffs' request for leave to amend their pleadings falls within the Fifth Circuit's mandate, they waived and abandoned any issue regarding Ms. Raskin's standing by failing to submit a brief addressing whether federal or state law, including section 151.001(a)(7) of the Texas Family Code, authorizes Ms. Raskin to proceed *pro se* on behalf of her children. As the Fifth Circuit aptly noted, *Ms. Raskin had the burden on remand of establishing that she was authorized under federal or state law to proceed pro se on behalf of her children*. Doc. 35 at 10. As Ms. Raskin has not met that burden, this constitutes an alternate ground for denying Plaintiffs' request to further amend their pleadings on remand because Ms. Raskin has not shown that she is qualified to bring *any claims* (either in her prior pleadings or currently proposed pleading) in her *pro se* capacity on behalf of her children.

## III.   Conclusion

For the reasons explained, the court **dismisses with prejudice** Plaintiffs' GINA claims against all Defendants in this action as frivolous; and **denies** Plaintiffs' Motion for Leave (Doc. 38). Further, having determined that Plaintiffs' federal GINA claims should be dismissed, the court **declines** to exercise supplemental jurisdiction over their remaining state law claims and **dismisses without prejudice** these claims pursuant to 28 U.S.C. § 1367(c) for the reasons previously explained in the court's Memorandum Opinion and Order dated November 17, 2021 (Doc. 31 at 8-9).[2]

---

[2] As explained, the reasoning in the court's prior Memorandum Opinion and Order (Doc. 31 at 8-9) regarding its decision under § 1367(c) to decline exercising supplemental jurisdiction over Plaintiffs' state law claims is incorporated by reference as if repeated herein verbatim.

**Memorandum Opinion and Order - Page 17**

**It is so ordered** this 30th day of September, 2024.

Sam A. Lindsay
United States District Judge